1    DOUGLAS L. HENDRICKS (CA SBN 83611)
     DHendricks@mofo.com
2    ELIZABETH O. GILL (CA SBN 218311)
     EGill@mofo.com
3    MORRISON & FOERSTER LLP
     425 Market Street
4    San Francisco, California  94105-2482
     Telephone: 415.268.7000
5    Facsimile: 415.268.7522

6    Attorneys for Defendant
     IAC SEARCH & MEDIA, INC.

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11   HOSTWAY CORPORATION, an Illinois          Case No.    C 07-3759 JCS
     Corporation,,
12                                             **DEFENDANT IAC SEARCH &
                        Plaintiff,             MEDIA, INC.'S OPPOSITION TO
13                                             PLAINTIFF'S TEMPORARY
          v.                                   RESTRAINING ORDER**
14
     IAC SEARCH & MEDIA, INC., a Delaware
15   Corporation,

16                      Defendant.

17

18

19

20

21

22

23

24

25

26

27

28

     DEFENDANT'S OPPOSITION TO TRO
     Case No.  C 07-3759 JCS
     sf-2361476                                                        1

OPPOSITION

## I.     INTRODUCTION

Defendant IAC Search & Media, Inc. ("Ask") submits this opposition to plaintiff Hostway Corporation's Motion for Temporary Restraining Order.  On July 17, 2007, Ask sent Hostway a letter terminating the parties' contract.  Hostway has now applied to the Court to enjoin Ask from such termination.  But Hostway is not entitled to any relief—injunctive or otherwise—because Ask was entirely within its rights to terminate its contractual relationship with Hostway based on Hostway's numerous breaches of the contract.

## II.     RELEVANT BACKGROUND

### A.     Relationship Between the Parties.

Ask is primarily an internet search company.  (*See* Declaration of Andrew Moers ("Moers Decl.") ¶ 3.)  It also engages in other internet business, however, one aspect of which is contracting with other companies to display their advertisements on various websites.  Ask is paid by the advertisers for these displays each time an individual "clicks" on one of the displayed advertisements, and this source of revenue is referred to as a "click-stream." (Moers Decl. at ¶ 3.) Hostway is also an internet company, and at issue here is its syndication or "parking" business.  This business involves the "display" of advertisements on websites that have been "parked" by Hostway.  (Moers Decl. at ¶ 4.)

In March 2007, Ask and Hostway entered into a Advertising Services and Search Services Syndication Agreement ("Agreement").  (Moers Decl. at ¶ ; *see also* Complaint for Breach of Contract, Injunctive Relief, and Damages, Ex. 1 ("Agreement").)  Pursuant to the Agreement, Hostway displays advertisements provided by Ask (in what is referred to as an "advertising feed") on websites that it has "parked."  (Moers Decl. at ¶ 4.)  The display of the advertisements by Hostway provides Ask with a click-stream, from which both it and Hostway, as well as Hostway's customer websites, derive revenue.  (Moers Decl. at ¶¶ 3-4.)

Also pursuant to the Agreement, Hostway is required to promote and display certain Ask content on its customer websites, as well as on Hostway's own website.  As described in the accompanying declaration of Andrew Moers, the Ask Senior Vice President who oversees the

DEFENDANT'S OPPOSITION TO TRO
Case No.  C 07-3759 JCS
sf-2361476

1

1  business relationship with Hostway, this requirement involves Hostway featuring the Ask search

2  function in a variety of ways starting "on or before the Launch Date," which occurred no later

3  than March 14, 2007.  (Moers Decl. at ¶ 9; Agreement § 3.7.1.)  Because Ask's current business

4  focus is on increasing its share of the internet search market and because Ask also derives

5  revenue from the use of its search engine, this provision of the Agreement was a significant

6  business motivation to Ask in entering into the Agreement.  (Moers Decl. at ¶ 10.)

7        **B.    Hostway's Conduct Under the Agreement.**

8        Between April 2007 and the present, it has become clear to Ask that Hostway does not

9  intend to comply with its contractual obligations.  Starting in April 2007, soon after the Launch

10  Date, Ask began communicating to Hostway in writing the importance and necessity of

11  implementing the Ask search features.  (Moers Decl. at ¶ 11; Declaration of Scott Hayashida

12  ("Hayashida Decl.") at ¶¶ 1-8, Exs. A-C.)  Despite these repeated demands, Hostway has

13  continued to stall, and, to date, it has yet to implement the search features.  (Hayashida Decl. at

14  ¶ 7; Moers Decl. at ¶¶ 12-15.)

15       Ask has also received reports from one of the other companies that provides Ask with a

16  "parking" click-stream, Directi/Skenzo ("Directi"), that Hostway is courting Directi's customers

17  for Hostway's "parking" business.  (Moers Decl. at ¶ 18.)  In so doing, Hostway is falsely telling

18  these customers that they can breach their agreements with Directi.  (Moers Decl. at ¶ 18.)

19  Hostway is also telling these customers that Hostway knows the business terms between Directi

20  and Ask, between Hostway and Ask, and between Directi and the customer, and because of this

21  confidential knowledge, Hostway can offer the customers business terms that are better than those

22  they receive from Directi.  (Moers Decl. at ¶ 18.)

23       Further, Ask has recently learned that a certain percentage of the click-stream provided by

24  Hostway is fraudulent.  (Moers Decl. at ¶ 24; Declaration of Dmitry Ryaboy ("Ryaboy Decl.") at

25  ¶¶ 1-2.)  This is a very serious problem for Ask, as evidenced by the strength of section 8.3(e) in

26  the Agreement, which entitles Ask to terminate the Agreement immediately if it determines "in its

27  sole discretion" that traffic being generated from Hostway's "parked" websites is fraudulent.

28

DEFENDANT'S OPPOSITION TO TRO
Case No.  C 07-3759 JCS
sf-2361476

2

1   Finally, in addition to the above, Ask believes that Hostway is engaging in additional,

2   problematic conduct.  Hostway appears to be using the intellectual property of Directi on its

3   customer websites (Moers Decl. at ¶¶ 20-23), it is displaying advertisements from Ask on

4   websites that violate third-parties' rights (Moers Decl. at ¶ 27), and it is displaying the Ask logo

5   without prior approval by Ask (Moers Decl. at ¶ 27).

6           **C.       Procedural History.**

7           By July 2007, Hostway was in active breach of at least three provisions of the

8   Agreement—sections 3.7, 8.3, and the Agreement's confidentiality provision—that entitled Ask

9   to immediate termination of the Agreement.  On July 17, 2007, Ask sent a letter to Hostway

10  describing its breach of three provisions and terminating the Agreement.  (*See* Letter from D.

11  Caul to J. Lee, attached as Exhibit 2 to Declaration of Namit Merchant in support of Motion for

12  TRO ("Merchant Decl.").)

13          Later that same day, Mr. Lee of Hostway contacted Mr. Moers of Ask seeking to postpone

14  the termination of service under the agreement.  (Moers Decl. at ¶ 6.)  Several days of discussions

15  between the two ensued.  (Moers Decl. at ¶ 6.)  Ask continued to provide services under the

16  agreement while these discussions occurred, notwithstanding the termination letter.  (Moers Decl.

17  at ¶ 6.)  On Sunday, July 22, the parties agreed that Ask would continue the advertising feed to

18  Hostway for two additional weeks (that is, until August 3, 2007).  (Moers Decl. at ¶ 6.)  A draft

19  agreement to this effect was circulated by Ask that day.  (Moers Decl. at ¶ 6.)

20          To Ask's shock and surprise, however, Hostway did not honor its agreement and sign the

21  document, but rather the following morning served notice of its intent to seek a temporary

22  restraining order.  (Moers Decl. at ¶ 7.)

23  **III.     ARGUMENT**

24          Hostway is not entitled to any relief—injunctive or otherwise.  Ask properly terminated

25  the Agreement on July 17, 2007, and Hostway therefore cannot demonstrate that it is likely to

26  succeed on the merits of its claims against Ask.[1]  Further, Hostway will not be irreparably harmed

27  _____

[1] Given the short time it had to prepare an opposition, Ask does not here address all of

28  Hostway's legal arguments regarding its entitlement to preliminary injunctive relief.  Ask

(Footnote continues on next page.)

DEFENDANT'S OPPOSITION TO TRO
Case No.  C 07-3759 JCS
sf-2361476                                                                                     3

1    if it is not granted injunctive relief, and Ask will be harmed if it is forced to continue to provide

2    Hostway with an advertising feed.[2]

3                    **A.    Ask Was Entitled to Terminate the Agreement.**

4            Ask was entitled to immediate termination of the Agreement on July 17, 2007, based on

5    Hostway's breach of section 3.7, 8.3, and the Agreement's confidentiality provisions, as set forth

6    in Ask's July 17, 2007 letter.

7            Section 3.7. Section 3.7 requires that Hostway (a) integrate the Ask search box as the

8    default search box for users of the Hostway Site Builder product, (b) make the Ask search box

9    available to Hostway's retail and non-retail hosting clients, and (c) include the Ask search box

10   and a link to the download of the Ask search toolbar on the www.hostway.com web site.

11   (collectively referred to herein as the implementation of the Ask.com search box and toolbar

12   feature). (Moers Decl. at ¶¶ ; Agreement, § 3.7.) Section 3.7.1 requires that this be done "on or

13   before the Launch Date." (Agreement, § 3.7.) The launch took place no later than March 14,

14   2007. (Moers Decl. at ¶ 9.)

15           Starting in April 2007, Ask began e-mailing Hostway about its failure to implement

16   search box and toolbar feature—notifying Hostway in writing of the problem. (Moers Decl. at

17   ¶ 11; Hayashida Decl. at ¶¶ 1-8, Exhibits A to C (attaching e-mail communications with

18   Hostway).) Ask also notified Hostway about the importance to Ask of the implementation of the

19   Ask.com search box and toolbar feature, which Hostway acknowledged. (Moers Decl. at ¶ 11;

20   Hayashida Decl. at ¶ 7, Ex C.) Despite Ask's repeated, written demands, Hostway has never

21   implemented the Ask.com search box and toolbar feature. (Moers Decl. at ¶¶ 12-15.)

22           Because Hostway has never implemented the Ask.com search box and toolbar feature, it is

23   in direct, material breach of section 3.7 of the Agreement. Section 8.2 provides that "[t]his

24   _____

     (Footnote continued from previous page.)

25   reserves its right to respond to these arguments, however, should the Court issue an order to show
     cause.

26

27           [2] Pursuant to its pledge to the Court, Ask is continuing to provide Hostway with the
     advertising feed until the Motion for Temporary Restraining Order has been decided.

28

1    Agreement may be terminated if either party fails to cure any material breach of this Agreement

2    within fourteen (14) days after such material breach is conveyed in reasonable detail in writing to

3    the other party." Ask notified Hostway of the breach at least as early as April 24, 2007

4    (Hayashida Decl. at ¶ 4, Ex. A.) well before July 3, 2007 (14 days before it sent the letter on July

5    17, 2007), and Hostway failed to cure the breach despite the notification. On that basis alone,

6    Ask was entitled to terminate the Agreement on July 17, 2007.

7         Section 8.3/Confidentiality Provisions. Section 8.3 of the Agreement provides that "Ask

8    *may suspend provision of the Ask Services and/or terminate the Agreement in whole or in part*

9    *immediately upon written notice* if [Hostway]" engages in certain conduct, including the

10   following: "(b) otherwise breaches the intellectual property rights of Ask or its third party

11   suppliers"; "(d) if the use of the Ask Services by [Hostway] disparages the business of Ask or its

12   third-party suppliers"; or (e) "if Ask, at its sole discretion, determines that traffic from the Site(s)

13   has been produced by fraudulent means." (Agreement § 8.3 (emphasis added).) Further, section

14   8.3 provides that "[e]ither party may terminate the Agreement immediately upon written notice if

15   a party breaches the confidentiality provisions of Section 9." (*Id.*)

16        Hostway has done all of the above. Hostway's "parking" business is based on technology

17   developed by another partner of Ask, Directi.[3] (Moers Decl. at ¶¶ 20-23.) As Mr. Merchant

18   admits, he used to be employed at Directi, and he brought that business to Hostway. (Merchant

19   Decl. ¶ 11.) Along with the business, Mr. Merchant also appears to have taken certain proprietary

20   systems and codes from Directi, that Hostway is openly using. (Moers Decl. at ¶¶ 20-23.) This

21   use of the Directi proprietary systems and codes by Hostway constitutes breach by Hostway of

22   the intellectual property rights of Directi, and therefore breach of section 8.3(b) of the Agreement.

23        In its courting of potential customers, Hostway has disparaged both Ask and Directi and

24   Hostway has breached Ask's confidentiality. Hostway is falsely telling Directi's website

25   customers that they can breach their contracts with Directi, disparaging both Directi and Ask in

26   _____

27        [3] Directi, like Hostway, is a third-party supplier of Ask in that it supplies a click-stream
     for advertising, thereby generating advertising revenue. (Moers Decl. at ¶¶ .)

28

1    direct breach of section 8.3(d) of the Agreement. (Moers Decl. at ¶ 18.) Hostway is also telling

2    Directi's customers that Hostway knows the business terms between Directi and Ask, between

3    Hostway and Ask, and between Directi and the customer, and because of this confidential

4    knowledge, Hostway can offer the customers business terms that are better than those they

5    receive from Directi. (Moers Decl. at ¶ 18.) This is in direct breach of section 9.5 of the

6    Agreement, which provides that the terms of the Agreement must be kept confidential. (Moers

7    Decl. at ¶¶ 25-26.)

8         Indeed, in filing its Complaint and Motion for Temporary Restraining Order, Hostway

9    additionally breached section 9.5 of the Agreement. By attaching the Agreement's revenue

10   terms, which are not necessary for Ask to assert its rights under the Agreement, to both the

11   Motion and Mr. Merchant's declaration, Hostway has violated its contractual obligation to keep

12   these terms confidential, as well as further demonstrated its cavalier attitude toward its

13   contractual obligations and Ask's confidentiality. In an attempt to mitigate the damage that

14   Hostway has already caused, Ask is filing a Motion to Seal simultaneously with its opposition to

15   the Motion for Temporary Restraining Order.

16        Most disturbingly, perhaps, Ask has recently determined that a certain percentage of the

17   traffic being produced by Hostway, or being generated from its parked websites, is fraudulent.

18   (Moers Decl. at ¶¶ ; Ryaboy Decl. at ¶¶ 1-2.) Such traffic breaches section 8.3(e) of the

19   Agreement, which allows Ask to terminate the Agreement immediately once it has determined

20   *"at its sole discretion"* that the traffic from the Hostway "parked" sites has been produced by

21   fraudulent means." (Agreement, § 8.3(e).)

22        Other provisions. Ask included only a subset of Hostway's breaches of the Agreement in

23   its July 17, 2007 letter. As set out in Mr. Moers declaration, however, Hostway is currently

24   breaching other provisions of the Agreement. (Moers Decl. at ¶ 27.) Should the Court grant

25   Hostway's Motion for Temporary Restraining Order based on the breaches alleged in the July 17,

26   2007, letter Ask would still be entitled to terminate the Agreement for a variety of other reasons.

27

28

**B.     Ask Will Be Harmed If Injunctive Relief Is Granted.**

Ask is being continuously harmed by Hostway's breaches of the Agreement. Ask is losing revenue and potential gains in search market share from Hostway's failure to implement the Ask search features in violation of section 3.7 of the Agreement, and Ask's reputation is being damaged by Hostway's disparagement of Ask and Directi and its breaches of Ask's confidentiality. (Moers Decl. at ¶¶ 28-29.) Ask's business relationship with Directi, from which Ask generates a significant amount of revenue, is also being put at risk. (Moers Decl. at ¶ 28.)

If the Court does grant Hostway's Motion for Temporary Restraining Order, Ask respectfully requests that the Court also order Hostway to cease and desist its breaches of the Agreement, particularly the breaches of sections 3.7, 8.3, and 9.5 of the Agreement.

**C.     Hostway Will Not Suffer Irreparable Injury If Injunctive Relief Is Not Granted.**

In his declaration, Mr. Merchant of Hostway claims that Hostway would need six months to replace the advertising feed it currently is sent by Ask. (Merchant Decl. ¶¶ .) The advertising feed sent by Ask, however, is not a specialty product: there are numerous, other providers of advertising services similar to those being provided by Ask to Hostway under the Agreement. (Moers Decl. at ¶ 30.) These other providers—including Google, Yahoo!, Kanoodle, Enhance Interactive, Miva, GoClick, Marchex, 7Search, Casale, and Looksmart—also enter into agreements with customers like Hostway in the ordinary course of their business. (Moers Decl. at ¶ 30.) Contrary to Mr. Merchant's representation, it would be a relatively easy matter for Hostway to substitute other services in place of the Ask services. (Moers Decl. at ¶ 30.)

Moreover, even if Hostway was not notified of its breach of section 3.7 of the Agreement until the July 17, 2007 letter, Ask is still entitled to terminate the Agreement as of July 31, 2007—14 days after its July 17, 2007 letter—inasmuch as Hostway has failed to cure its material breach of at least section 3.7 of the Agreement. And even if the Court grants Hostway's Motion for Temporary Restraining Order, Ask is still entitled to terminate the Agreement based on all of Hostway's other breaches of the Agreement. Indeed, given how numerous they are, termination of the Agreement seems inevitable.

DEFENDANT'S OPPOSITION TO TRO
Case No. C 07-3759 JCS
sf-2361476

7

1

**IV.    CONCLUSION**

2    For the foregoing reasons, defendant Ask respectfully requests that the Court deny

3 Hostway's Motion for a Temporary Restraining Order.  If the Court grants the Motion, Ask

4 respectfully requests that the Court extend the term of the temporary restraining order only to

5 Tuesday, July 31, 2007, make clear that Ask is still entitled to terminate the Agreement on the

6 basis of other breaches by Hostway, and order Hostway to cease and desist its breaches of

7 sections 3.7, 8.3, and 9.5 of the Agreement.

8

9 Dated: July 25, 2007

DOUGLAS L. HENDRICKS
ELIZABETH O. GILL
MORRISON & FOERSTER LLP

10

11

12    By: _Douglas L. Hendricks_____

13    Douglas L. Hendricks

14    Attorneys for Defendant
IAC SEARCH & MEDIA, INC.

15

16

17

18

19

20

21

22

23

24

25

26

27

28