Fredric A. Cohen, Esq.
CHENG COHEN LLC
1101 West Fulton Market, Suite 200
Chicago, IL 60607
Telephone: (312) 243-1701
Facsimile: (312) 277-3961
(*Application to be Admitted Pro Hac Vice to be Filed*)


Charles G. Miller (State Bar No. 39272)
C. Griffith Towle (State Bar No. 146401)
BARTKO, ZANKEL, TARRANT & MILLER
A Professional Corporation
900 Front Street, Suite 300
San Francisco, California 94111
Telephone: (415) 956-1900
Facsimile: (415) 956-1152

Attorneys for Plaintiff
HOSTWAY CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| HOSTWAY CORPORATION, an Illinois Corporation,<br><br>         Plaintiff,<br><br>    v.<br><br>IAC SEARCH & MEDIA, INC., a Delaware Corporation,<br><br>         Defendant. | No. C 07-3759 JCS<br><br>**SUPPLEMENTAL DECLARATION OF NAMIT MERCHANT IN SUPPORT OF PLAINTIFF HOSTWAY CORPORATION'S MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION** |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOSTWAY CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. C 07-3759 JCS |
| ) | |
| IAC SEARCH & MEDIA, INC., ) | |
| ) | |
| Defendant. ) | |

## SUPPLEMENTAL DECLARATION OF NAMIT MERCHANT

1.  My name is Namit Merchant. I make this supplemental declaration in response to certain things stated in the declarations of Andrew Moers, Dmitriy Ryaboy and Scott Hayashida, filed by IAC.

2.  Mr. Moers in his declaration (at ¶ 9) says that we were supposed to implement the search box on or before the Launch Date, which he says was March 14, 2007. The Launch Date is actually defined (in § 2.1) as 15 business days after the agreement's Effective Date (March 2, 2007), "<u>assuming XML implementation details have been received</u>" by Hostway from IAC. Paragraph 4 of Mr. Hayashida's declaration confirms that IAC did not even provide me with the necessary XML feed ID link that is required to implement the search box until April 24, 2007 – some <u>seven weeks</u> after the Syndication Agreement was signed and about <u>a full month</u> after the Launch Date. Furthermore, the e-mail Mr. Hayashida refers to shows that on April 27 he instructed us not to use the new feed IDs until there was a change in the technical implementation. This change wasn't completed until May 17th. In other words, the actual XML implementation wasn't available for integration with a search box until May 17.

3. Mr. Hayashida's suggestion (at ¶ 5 of his declaration) that I "stalled" him by telling him in an April 25, 2007 e-mail that I would get him more information in a few weeks is contradicted by the very e-mail stream he relies on. That e-mail stream shows that Hostway was working diligently on implementation of the Syndication Agreement, including implementation of the search box.

4. Mr. Hayashida's statement (in ¶ 6 of his declaration) that on May 16, 2007 he "gave further notice to Hostway that it was in breach" of the Syndication Agreement is wrong. First, his use of the word "further" suggests he had previously given notice to Hostway "that it was in breach" of the agreement. I never received any such notice from Mr. Hayashida, and I am not aware of anyone at Hostway who did. Second, the May 16 e-mail that Mr. Hayashida relies on says nothing of the sort. Instead, with regard to implementation of the search box all it says is: "2. Implement the Ask search box on Hostway hosted pages. Last we discussed you mentioned that this would be done by June." I responded by telling Mr. Hayashida that "2. That project hasn't been picked up yet due to other high priority issues on the domain monetization side." Mr. Hayashida then asked: "2. When can we get this started?" He never said Hostway was in breach of the Syndication Agreement. This e-mail stream too shows that we were working hard on implementing the Syndication Agreement, that there were several projects we were working on with IAC, and that IAC never said anything that suggested that we were in breach of the agreement or that they were putting us "on notice" that we were in breach and needed to cure within 14 days.

5. Mr. Moers in his declaration says that he was told by someone at Directi – he doesn't say by whom – that I have been "courting" Directi customers. What I have

been doing is competing on behalf of my employer, Hostway, with Hostway's competitor, Directi. That should come as no surprise to Mr. Moers because, as the Syndication Agreement shows, it was specifically anticipated that Hostway would compete with Directi for customers. Just by way of example, §1 of Exhibit B to the agreement talks about how revenues from former Directi customers will be treated. Hostway does compete with Directi and other competitors for syndication customers, and visa versa.

6. Having said that, the statement attributed by Mr. Moers to unidentified Directi employees to the effect that I have told Directi customers that they can violate exclusivity provisions of contracts is false. I do know the terms of IAC's deal with Directi because I used to work at Directi and I dealt with the IAC arrangement. And I of course know the terms of IAC's deal with Hostway. However, <u>I have never disclosed to anyone the actual terms of IAC's deal with Directi</u>. (I notice that Mr. Moers is careful to avoid saying that I had).

7. Mr. Moers says at ¶ 20 of his declaration that similarities in keywords generated by the Directi system and by the Hostway system "suggest[] to Directi" that Hostway is either using the Directi system or copying Directi's keywords. To me it is as suggestive that Directi is using Hostway's system. Hostway is not using and has not used any proprietary Directi system.

8. I don't know what the unidentified Directi employees referred to in ¶ 23 of Mr. Moers' declaration said to him. What I do know is that I took no proprietary information of Directi, not source code and not any keyword database, when I left.

3

9. Prior to reading Mr. Moers' declaration I had never before heard the claim from IAC that Hostway breached on the basis that some traffic produced from sites hosted by Hostway was "fraudulent." I can't tell from reading Mr. Moers' declaration whether he is claiming (or whether Directi, our competitor to whom Mr. Moers attributes it, is claiming) that the 5.6% of traffic referred to is truly fraudulent, meaning the product of somebody sitting at a site and repeatedly clicking on an ad in order to generate revenue for the domainer (and every one else in the chain, including IAC), whether just some portion of that 5.6% is fraudulent, or whether any of it is truly fraudulent. This traffic is usually the product of "bots," not of somebody sitting at a site at clicking repeatedly on an ad. "Bots" are programs that search engines (like Google for example) launch for the purpose of indexing the web. Bots visits sites and click on links. In the syndication or parking business, this sort of traffic isn't intended to generate revenues so we track it and try to limit it, but it will always exist. For example, after we began implementing the Syndication Agreement, I asked IAC to run a spam report so I could see what percentage of traffic was spam. The report IAC generated for me for April 2007 is attached to my supplemental declaration as Exhibit 1. It shows spam rates of up to 5.28%. This report was unremarkable because spam rates in that range are ordinary and not unusual. I have not seen any subsequent report, but obviously the declaration of Mr. Ryaboy is inconsistent with this report provided to me by IAC.

10. I am not a lawyer so I can't respond to Mr. Moers' claim that we're violating third parties' rights by placing ads on certain websites. No one at IAC ever raised this complaint before. What I do know is that IAC gave us its Ask TM List, a list

4

of websites that we could not place ads on. The websites referred to in Mr. Moers' declaration are not on that list.

11. We are working diligently to implement a search box and I believe that Hostway will have fully implemented the search box function by July 31, 2007.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on July 26, 2007.

_____
NAMIT MERCHANT

# EXHIBIT 1

| Date | Queries | Matched queries | Coverage | Spam queries | Impressions | Spam impressions | Clicks | Spam clicks | Total Clicks | Spam % | CTR | CPC | Estimated gross revenue | RPM |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/1/2007 | 2,414 | 1,917 | 79.41% | 0 | 11,299 | 0 | 610 | 34 | 644 | 5.28 | 31.82% | $0.27 | $ 163.37 | $67.68 |
| 4/2/2007 | 3,515 | 2,942 | 83.70% | 7 | 17,859 | 60 | 959 | 22 | 981 | 2.24 | 32.60% | $0.33 | $ 314.45 | $89.46 |
| 4/3/2007 | 6,252 | 5,232 | 83.69% | 0 | 34,594 | 0 | 1,445 | 57 | 1,502 | 3.79 | 27.62% | $0.38 | $ 555.87 | $88.91 |
| 4/4/2007 | 9,576 | 7,201 | 75.20% | 0 | 48,049 | 0 | 2,344 | 53 | 2,397 | 2.21 | 32.55% | $0.38 | $ 901.40 | $94.13 |
| 4/5/2007 | 11,764 | 8,228 | 69.94% | 0 | 51,745 | 0 | 2,441 | 63 | 2,504 | 2.52 | 29.67% | $0.38 | $ 932.08 | $79.23 |
| 4/6/2007 | 14,549 | 9,459 | 65.02% | 2 | 55,828 | 2 | 2,661 | 72 | 2,733 | 2.63 | 28.13% | $0.38 | $ 1,018.28 | $69.99 |
| 4/7/2007 | 15,144 | 9,518 | 62.85% | 0 | 55,633 | 0 | 2,709 | 110 | 2,819 | 3.90 | 28.46% | $0.26 | $ 709.49 | $46.85 |
| 4/8/2007 | 13,370 | 8,671 | 64.85% | 3 | 49,037 | 11 | 2,399 | 89 | 2,488 | 3.58 | 27.67% | $0.29 | $ 693.24 | $51.85 |
| 4/9/2007 | 17,101 | 12,410 | 72.57% | 17 | 74,424 | 83 | 3,553 | 109 | 3,662 | 2.98 | 28.63% | $0.34 | $ 1,219.62 | $71.32 |
| 4/10/2007 | 18,550 | 13,387 | 72.17% | 13 | 79,136 | 38 | 3,726 | 111 | 3,837 | 2.89 | 27.83% | $0.30 | $ 1,118.20 | $60.28 |
| 4/11/2007 | 27,222 | 17,215 | 63.24% | 9 | 93,780 | 47 | 4,846 | 149 | 4,995 | 2.98 | 28.15% | $0.25 | $ 1,195.82 | $43.93 |
| 4/12/2007 | 38,581 | 23,771 | 61.61% | 8 | 127,239 | 49 | 6,918 | 335 | 7,253 | 4.62 | 29.10% | $0.28 | $ 1,905.19 | $49.38 |
| 4/13/2007 | 41,638 | 25,158 | 60.42% | 9 | 131,508 | 71 | 7,144 | 280 | 7,424 | 3.77 | 28.40% | $0.28 | $ 2,030.33 | $48.76 |
| 4/14/2007 | 40,074 | 23,994 | 59.87% | 17 | 120,850 | 106 | 7,240 | 221 | 7,461 | 2.96 | 30.17% | $0.23 | $ 1,645.26 | $41.06 |
| 4/15/2007 | 36,581 | 22,515 | 61.55% | 19 | 115,760 | 163 | 6,573 | 208 | 6,781 | 3.07 | 29.19% | $0.24 | $ 1,572.25 | $42.98 |
| 4/16/2007 | 46,043 | 29,424 | 63.91% | 12 | 158,341 | 99 | 8,157 | 260 | 8,417 | 3.09 | 27.72% | $0.28 | $ 2,253.27 | $48.94 |
| 4/17/2007 | 42,648 | 26,903 | 63.08% | 12 | 141,057 | 93 | 7,683 | 247 | 7,930 | 3.11 | 28.56% | $0.27 | $ 2,041.72 | $47.87 |
| 4/18/2007 | 41,555 | 25,629 | 61.68% | 16 | 132,219 | 115 | 7,546 | 259 | 7,805 | 3.32 | 29.44% | $0.27 | $ 2,038.76 | $49.06 |
| 4/19/2007 | 38,928 | 23,197 | 59.59% | 12 | 116,995 | 94 | 6,637 | 214 | 6,851 | 3.12 | 28.61% | $0.25 | $ 1,649.24 | $42.37 |
| 4/20/2007 | 44,353 | 27,908 | 62.92% | 15 | 144,219 | 98 | 8,165 | 272 | 8,437 | 3.22 | 29.26% | $0.26 | $ 2,152.30 | $48.53 |
| 4/21/2007 | 43,400 | 26,838 | 61.84% | 36 | 134,709 | 276 | 8,661 | 276 | 8,937 | 3.09 | 32.27% | $0.24 | $ 2,069.38 | $47.68 |
| 4/22/2007 | 42,953 | 26,832 | 62.47% | 54 | 135,419 | 306 | 8,549 | 229 | 8,778 | 2.61 | 31.86% | $0.23 | $ 1,932.75 | $45.00 |
| 4/23/2007 | 54,180 | 35,346 | 65.24% | 22 | 187,330 | 156 | 10,581 | 378 | 10,959 | 3.45 | 29.94% | $0.26 | $ 2,698.46 | $49.81 |
| 4/24/2007 | 51,850 | 33,584 | 64.77% | 26 | 178,481 | 178 | 10,057 | 367 | 10,424 | 3.52 | 29.95% | $0.26 | $ 2,616.29 | $50.46 |
| 4/25/2007 | 69,484 | 38,783 | 55.82% | 20 | 191,567 | 133 | 11,283 | 297 | 11,580 | 2.56 | 29.09% | $0.22 | $ 2,526.83 | $36.37 |
| 4/26/2007 | 73,297 | 40,846 | 55.73% | 16 | 199,873 | 126 | 11,689 | 319 | 12,008 | 2.66 | 28.62% | $0.23 | $ 2,739.32 | $37.37 |
| Total |  |  |  |  |  |  |  | 5,031 | 159,607 | 3.15 |  |  |  |  |