1  Fredric A. Cohen, Esq.
   CHENG COHEN LLC
2  1101 West Fulton Market, Suite 200
   Chicago, IL 60607
3  Telephone: (312) 243-1701
   Facsimile: (312) 277-3961
4  (*Application to be Admitted Pro Hac Vice to be Filed*)

5

6  Charles G. Miller (State Bar No. 39272)
   C. Griffith Towle (State Bar No. 146401)
7  BARTKO, ZANKEL, TARRANT & MILLER
   A Professional Corporation
8  900 Front Street, Suite 300
   San Francisco, California 94111
9  Telephone: (415) 956-1900
   Facsimile: (415) 956-1152

10 Attorneys for Plaintiff
   HOSTWAY CORPORATION

11

12               UNITED STATES DISTRICT COURT

13               NORTHERN DISTRICT OF CALIFORNIA

14                    SAN FRANCISCO DIVISION

15 HOSTWAY CORPORATION, an Illinois  ) No. C 07-3759 JCS
   Corporation,                      )
16                                   ) **REDACTED DECLARATION OF**
              Plaintiff,             ) **NAMIT MERCHANT IN SUPPORT**
17                                   ) **OF PLAINTIFF HOSTWAY**
        v.                           ) **CORPORATION'S MOTION FOR**
18                                   ) **TEMPORARY RESTRAINING**
   IAC SEARCH & MEDIA, INC., a Delaware ) **ORDER AND ORDER TO SHOW**
19 Corporation,                      ) **CASE RE PRELIMINARY**
                                     ) **INJUNCTION**
20            Defendant.             )
                                     )
21 _____

22

23

24

25

26

27

28

---

999.000/330949.1    DECLARATION OF NAMIT MERCHANT IN SUPPORT OF HOSTWAY'S MOTION FOR TRO AND ORDER
                                                                          Case No. C 07 3759 JCS

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| HOSTWAY CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| IAC SEARCH & MEDIA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF NAMIT MERCHANT

1.  My name is Namit Merchant. I am an individual over the age of eighteen (18) years. I have personal knowledge of the matters set forth in my Declaration, and I would be ready, willing and able to testify to those matters if and when called upon to do so. I make this Declaration in support of Hostway Corporation's motion for temporary restraining order against IAC Search & Media, Inc. to enjoin it from terminating the March 2, 2007 Advertising Services and Search Services Syndication Agreement.

2.  I am employed by Hostway Corporation ("Hostway"). I have worked for Hostway since January 2006. I hold two positions with Hostway. First, I am the Chief Executive Officer of Hostway Solutions Pvt. Ltd. (India), a wholly-owned subsidiary of Hostway. And I am also Hostway's Vice President -- Advertising Products. I have served in both of those capacities since joining Hoswtay.

3.  Hostway is a private company headquartered in Chicago, Illinois, but with several locations around the world. I am based at Hostway India's offices in Mumbai, India. Hostway is in the business of offering web-hosting services and related products and services to its customers.

4. Before joining Hostway in January 2007, I was employed by Directi/Skenzo (India) ("Directi") as a General Manager. Directi is a competitor of Hostway. Its website (www.directi.com) claims that Directi is valued at $300 million, servicing over a million customers (with a 120% annual customer growth rate) in over 240 countries. I was employed by Directi for nearly three years, from April 2003 through January 2007.

5. From February 2002 through April 2003, I worked for Orientsoft Technologies Pvt. Ltd. (India) as its Chief Technology Officer.

6. I have also served in a number of consulting capacities with technology companies, including Red Apple Travel (UK) Ltd. (August 2001 – February 2003), Network Intelligence (India) Pvt. Ltd. (July 2001 – January 2002), Aryan Informatics (India) Pvt. Ltd. (December 2000 – June 2001), and Procter & Gamble (India) (July 2000 – April 2001).

7. As Hostway's Vice President – Advertising Products, my duties and responsibilities include overseeing the development, marketing and implementation of those advertising products that Hostway makes available to its customers.

8. My responsibility for Hostway's advertising products encompasses Hostway's syndication or "parking" business. The syndication business involves the "parking" of advertising on popular web domains. Simply put, advertisers pay to have their ads and a linking mechanism to their own websites placed on the websites of others (known as "domainers") for the purpose of driving web traffic to the advertisers' own websites. Companies like IAC Search & Media, Inc. ("IAC") act as a repository of these ads and then "feed" the ads to "syndicators" like Hostway.

9. The syndicators perform two critical functions. First, they develop the engineering and technologies necessary to sift through the ads fed by repository companies like IAC, and to select and channel the most appropriate ads to the domainer's website. Second, they develop the algorithms needed to accurately track the "hits" on the advertisers' linking mechanisms to account for that ad traffic so that everyone in the chain of distribution is compensated appropriately.

10. Compensation is based on clicks. When a person visiting a domainer's website clicks on the advertiser's ad or linking mechanism parked on that website, the advertiser pays a fee to the repository company (like IAC), which in turn pays a share of that fee to the syndicator (like Hostway), who in turn pays a share of the fee to the domainer.

11. I have been involved in developing and managing syndication businesses for several years. While at Directi, I developed Directi's syndication business. Hostway is a newcomer to the syndication business. I began developing Hostway's syndication business and the engineering and technologies needed to enter the business and the algorithms necessary to monetize traffic in early 2006.

12. While at Directi, I was not subject to any sort of non-competition covenant or agreement. When I announced that I would be leaving to join Hostway, Directi sought to have me sign a confidentiality and non-competition agreement but I declined to do so. Hostway and Directi are competitors in various lines of business. One of these is the syndication business. Agreeing to a non-compete agreement would have precluded me from working at Hostway.

13. Hostway entered into the Syndication Agreement with IAC in March 2007. In the six months leading up to the Syndication Agreement, Hostway invested thousands of engineering hours and millions of dollars to develop the engineering and technologies necessary to perform as a syndicator. Once it became clear (even in advance of the Syndication Agreement's execution) that IAC would be the source of the syndicated ads Hostway would be working with, Hostway devoted additional time, money and resources to optimize its systems to work with IAC's systems. This optimization process continued even after the Syndication Agreement was signed and, indeed, continues to this day as we work to improve and refine the interface between Hostway and IAC.

14. Like Hostway, Directi also gets its ads feed from IAC. Directi has been a customer of IAC for at least two and a half years. The revenues that Directi generates for IAC are at least ten-fold times greater than those generated by Hostway for IAC. Simply stated, Directi is a large and important client of IAC; Hostway is not.

15. On July 17, 2007, Hostway received a letter from IAC's General Counsel notifying Hostway that IAC was terminating the Syndication Agreement immediately. The letter stated that IAC was terminating as a result of "several breaches" of the Syndication Agreement by Hostway.

16. I have been in charge of Hostway's performance under the Syndication Agreement. Hostway has not breached the Syndication Agreement. While Hostway and IAC have had discussions concerning the ongoing optimization and refinement of the Hostway-IAC interface, prior to the July 17 letter from its general counsel IAC has never

expressed to Hostway that it believes Hostway has "breached," much less "materially breached," the Syndication Agreement.

17.  In the July 17 letter, IAC claims that Hostway's breached § 3.7 "to integrate the Ask.com search box as the default search box" for certain of Hostway's customers, and "to engage in certain promotional efforts" on defendant's behalf. This is one of the areas that Hostway and IAC have been discussing, but IAC has never claimed that Hostway breached §3.7. Under the Syndication Agreement IAC is supposed to give Hostway written notice of any breach in "reasonable detail" and fourteen (14) days to fix the problem. The July 17 letter is the first written notice Hostway has ever received about any claimed breach of § 3.7. The letter, which is written by a lawyer rather than any of the engineers or business people we typically deal with, does not provide me with the reasonable detail I would need in order to understand what IAC claims the problem is or what Hostway needs to do to fix it. And the letter says that IAC is terminating the Syndication Agreement immediately without giving us the fourteen (14) days we are entitled to in order to cure any claimed breach.

18.  Hostway is ready, willing and able to fix any problem and cure within fourteen (14) days of reasonable notice any breach of § 3.7 IAC claims exists.

19.  The July 17 letter also claims that IAC "believes" that Hostway disclosed confidential information of IAC and Directi. The letter does not say what this belief is based on. I have not disclosed any confidential information about IAC and I am not aware of any person at Hostway who has. As far as information about Directi is concerned, I am not under any contractual or other obligation not to use or disclose information about Directi. In any event, the Syndication Agreement does not give IAC

the right to terminate based on any claimed disclosure of information about a third party. And it is highly unusual in this industry for a repository company like IAC to act as the enforcer of one customer's interests against another.

20. The July 17 letter also says that IAC "is informed and believes" that a Hostway employee who formerly had been employed by Directi encouraged customers of his former employer to switch to Hostway. The letter doesn't identify the employee, but I suspect the reference is to me. In the syndication business, Hostway and Directi are competitors for the business of domainers. All of the marketing and advertising that syndicators do (Hostway and Directi included) is intended to encourage customers and potential customers to choose their products and services. In fact, IAC was fully aware of the fact that Hostway might seek out Directi customers as evidenced by the express terms of the Syndication Agreement drafted by IAC. I have never done anything improper, unlawful or unethical to encourage any customer of Directi or of any other competitor of Hostway to switch to Hostway.

21. Based on my familiarity with Directi (as a former employee) and IAC (as a current customer and business partner), I believe that Directi – which is not entitled contractually or otherwise to prevent me from working for a competitive business – seeks to accomplish indirectly what it can't accomplish directly, by threatening IAC with termination unless IAC gets rid of Hostway. Because Directi is a much larger and more important IAC customer than is Hostway – I believe Directi is one of IAC's top-5 syndicator customers – I believe that IAC seeks to terminate the Syndication Agreement on pretextual grounds in order to save its relationship with Directi.

22. Hostway is entitled to the full two year initial term of the Syndication Agreement because it has done nothing to breach the agreement. Hostway has invested heavily in the development of its syndication business and in the optimization of that business to work with the IAC feed. The millions of dollars Hostway had invested in building this business can be counted but the thousands of hours of engineer work and innovation cannot readily be measured, and all of it will be lost should IAC not be stopped from terminating the feed.

23. If the IAC feed were terminated, the harm to Hostway's syndication business would be immediate and devastating. The relationship between domainers and syndicators is like the relationship between investors and brokerages. If a broker were unable to trade stocks on its investors' behalf because it lost its access to the exchanges, the investors would go elsewhere. The same is true here. If Hostway lost its ad feed from IAC, its domainers would immediately leave Hostway and find an alternative syndicator, and Hostway's syndication business would be completely destroyed. In addition, the goodwill associated with Hostway's name and reputation as a reliable and high-quality provider of web services would be severely damaged.

24. Based on my experience developing syndication businesses at Directi and at Hostway, were the IAC ad feed terminated, it would take Hostway about six months to find an alternative repository company, negotiate a new syndication agreement, retool its business to match the new supplier's guidelines and technology, and begin seeking out new domainer customers. In this highly competitive, fast-paced and innovative field, I am concerned whether Hostway would succeed in seeking to reenter the syndication business if it were effectively excluded for a six month period. At minimum, the set-back

it would experience by reason of such exclusion would be tremendous in terms of its competitive position in this highly-competitive business.

25. Regardless of whether Hostway were able to reenter the syndication business in six months, the destruction of Hostway's existing syndication business that would result from termination of the Syndication Agreement would be felt not only by Hostway itself, but by the roughly 25 employees involved in the business whose continued employment would be placed in jeopardy.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on July 22, 2007.

_____

NAMIT MERCHANT

# EXHIBIT 1

**Exhibit 1 Filed Under Seal Pursuant To Court Order**

-1-

Case No.

# EXHIBIT 2

# IAC / Search & Media

555 12th Street, Suite 500
Oakland, CA 94607

510.985.7400 T
510.985.7410 F

July 17, 2007

VIA UPS OVERNIGHT AND EMAIL
Mr. John Lee
Hostway Corporation
One North State Street, 12th Floor
Chicago, IL 60602

    Re: Termination of Advertising Services and Search Services Syndication Agreement

Mr. Lee:

    This letter is to notify you of the immediate termination of the Advertising Services and Search Services Syndication Agreement between Hostway Corporation ("Hostway") and IAC Search & Media, Inc. ("IACSAM") dated March 2, 2007 (the "Agreement"). IACSAM is taking this action as a result of several breaches of the agreement by Hostway and other reasons as described herein.

    Pursuant to Section 3.7, Hostway is required to integrate the Ask.com search box as the default search box for users of the Hostway Site Builder product and requires Hostway to engage in certain promotional efforts on hostway.com on behalf of Ask.com. The contract clearly requires that these actions be taken on or before the Launch Date. Despite several inquiries by IACSAM, Hostway has not complied with its contractual obligations in this regard to date.

    In addition, IACSAM believes that Hostway has disclosed confidential information of IACSAM and one of IACSAM's current customers (and your former employer) Skenzo/Directi in its efforts to convince Skenzo/Directi's customers replace them with Hostway. As you are well aware, the details of our agreement with Hostway and with our other customers are strictly confidential. Pursuant to Section 8.3 of the agreement, a breach of confidentiality is grounds for immediate termination of the agreement.

    Moreover, certain business practices of Hostway disparage the business of IACSAM. IACSAM is informed and believes that an employee of Hostway has encouraged customers of his former employer Directi to breach their agreements with Directi. IACSAM does not wish to be associated with such practices and feels that continuing to offer our services to Hostway would disparage the business of IACSAM. Pursuant to Section 8.3 of the agreement, Hostway's disparagement of the business of IACSAM is grounds for immediate termination of the agreement.

    As you are aware, prior to entering into the Agreement, Hostway represented to IACSAM that Hostway was in the process of making an acquisition that would result in a large volume of new business to IACSAM. You are also aware that this new business or

a significant volume of other new business was a critical factor in IACSAM's decision to offer its services to Hostway. As was clearly indicated to you, the value to IACSAM in a business relationship with Hostway resided in Hostway's ability to bring new sources of traffic to IACSAM and to have Ask.com promoted by Hostway. Neither of these has happened, nor does there appear to be a reasonable prospect of them occurring in the near future. As such, IACSAM's purpose in entering into the agreement has been frustrated by Hostway and the representations made at the time have not turned out to be accurate.

We regret the necessity of terminating the Agreement, but feel that Hostway has given us no other options.

Sincerely,

Daniel E. Caul
SVP and General Counsel


cc: Hostway Legal Department